## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **NO. 3 CR 21-168** |
| v. | : | |
| | : | |
| **THOMAS MCDONALD** | : | **JUDGE MANNION** |
| | : | |
| **Defendant.** | : | |

## DEFENDANT THOMAS MCDONALD'S SENTENCING MEMORANDUM

## I.

Thomas McDonald is a forty-eight (48) year old, lifelong Scranton resident, starting from a meager environment, living in low-income housing, exposed to substance abuse, and raised by a single mother, emerged as a dutiful military servicemember and accomplished long-time undercover drug-interdiction law enforcement officer, prioritizing his experience and skills to achieve supervisory roles within the Scranton Police Department. Mr. McDonald previously married for twenty-three (23) years, underwent a divorce in 2019. As a result, Mr. McDonald has a fractured relationship with his oldest son, age twenty-three (23), however, he continues to enjoy a close and supportive relationship with his younger son, age sixteen (16), whom he converses with daily. Additionally, Mr.

1

McDonald enjoys a close and supportive relationship with his mother, Diane Thomas age sixty-eight (68), whom he currently resides with. Specifically, Mrs. Thomas referenced the struggles her son endured and explained his underlying conduct as contextual and "totally out of his character."

Mr. McDonald's older cousin, Diane Scandale similarly remarked: "It was difficult for him growing up in his teenage years [ . . . ] after highschool he wanted to do something meaningful for himself and he chose serving the community by being a police officer [ . . . ] He then served his country by going to Iraq and was on special duties there that were very challenging [ . . . ] when he came home, it was obvious that he was not the same young man that went to Iraq [ . . .] anxious and just not the same [ . . . ] now that he has had treatment and therapy, he has an understanding of what is right and what is not [ . . .] Tom is a good person that just made some foolish mistakes, and he knows it and is trying very hard to fix them and do better for his family and society." (See Exhibit 1).

Mr. McDonald's father, John McDonald, is deceased and suffered from a heroin addiction, leading to an absentee role in Mr. McDonald's life.

Mr. McDonald's military career began shortly after graduating from Scranton High School in 1992, when he enlisted in the Marine Corps with active duty at Camp Lejeune and Parris Island. Six years later, Mr. McDonald's alcohol consumption led to an "other than honorable" discharge. In 1999, Mr. McDonald

returned as a servicemember with the Pennsylvania National Guard for ten (10) years, earning the rank of Staff Sergeant.  Most notably, Mr. McDonald persevered in Iraqi combat deployment.  The leader of a three (3) person team, he demonstrated: "*high standards of behavior*; a model solider and successful leader for others to follow; *integrity above his skill level in all issues* and problems he was faced with [ . . . ] performed all duties above expected standards and expectations; used sound judgment when making decisions that affected his team and detainees, *always fair and just* [ . . . ] *accomplished professional;* consistently performs above others of same rank; discharged duties with complete *professionalism and understanding*; unique, rare talent as an NCO and leader, *promote now* ahead of peers. " (See Exhibit 2).  Mr. McDonald received an "Excellence- Exceed Standard" scoring in the Training category as well as the Responsibility & Accountability category.  (See Exhibit 2).  He was selected among all others in his platoon and entrusted with guarding or transporting several high-profile members of the Iraqi regime[1] and became the **target of numerous mortar attacks- daily.**

During this deployment, Mr. McDonald bonded with a member of his unit, Sergeant Jan Argonish.  Sergeant Argonish would later succumb to an insurgent

---

[1] An NCO Evaluation Report listed Mr. McDonald's "Area of Special Emphasis" as: "Responsible for the security and safety of 93 former Iraqi Military Leaders, Civilian Internees and the 11 criminally charged former Iraqi Regime Leaders." (See Exhibit 2).

attack in 2007, during a second deployment that initially included Mr. McDonald. However, with the approaching birth of his younger son, Mr. McDonald remained home. The impact of Sergeant Argonish's death triggered unending feelings of survivor's guilt and self-blame associated with Mr. McDonald's decision to remain home.[2] Ultimately, Mr. McDonald concluded his invaluable and admirable military service with a promotion as a squad leader in the scout platoon.

Simultaneous with Mr. McDonald's military service, he completed the Act 120 municipal police officers training at Lackawanna College in 2002[3] and began a lengthy eighteen (18) year employment with the Scranton Police Department in various capacities.[4]  Quick to become a rising star in the Department, commended for his critical incident responses,[5] and mostly working in covert or undercover policing roles, Mr. McDonald became a member of the Department's SWAT team

---

[2] Recently, Mr. McDonald has disclosed that after Sergeant Argonish's death, his alcohol use intensified to six days a week, starting in the morning and drinking all day.

[3] In 2015, Lackawanna College employed Mr. McDonald as a firearms instructor for the Act 120 training.

[4] Mr. McDonald was assigned as a member of the Pro Active Criminal Enforcement Unit, Special Investigations Division, Street Crimes Unit, Lackawanna County Drug Task Force, and Organized Crime Drug Enforcement Task Force.

[5] "Patrolmen McDonald and Schaufler were attentive to the needs of their beat by patrolling the high crime area where an incident was probable. Once the incident started, they immediately went into action undeterred by the numbers involved or inherent risk associated. Their professionalism, teamwork, and dedication to duty reflected greatly on "C" Shift and the Scranton Police Department." (See Exhibit 3).

in 2008 and promoted to Corporal in 2009.  He returned to his covert or undercover policing roles in 2014 and remained in this capacity until his recent resignation.  Ultimately, Mr. McDonald participated in well over five hundred (500) narcotics investigations as a covert or undercover, and eventually testified as an expert witness regarding narcotics investigations in pretrial hearings and jury trials.  The successional recipient of an award presented by drug and alcohol treatment services,[6] Mr. McDonald was recognized for his "Appreciation for Your Years Of Hard Work and Dedicated Service to the Law Enforcement Field and Making Our Community Safer."  (See Exhibit 4).  He also was awarded the "Spirit of Courage Award," on behalf of the Lehigh Valley Health Network "for heroically risking your own life or serious injury in an attempt to save another from death or injury by fire."  Scranton Police Chief Daniel Duffy nominated Mr. McDonald based upon his "bravery," for a residential fire[7] that occurred on April 9, 2012, in which Mr. McDonald rescued a family of three (3) trapped on the roof, among others nearby. (See Exhibit 5).  In 2014, Corporal McDonald also received

---

[6] Mr. McDonald received the award in December 2007, and in December 2008.
[7] "Corporal McDonald did arrive at the scene prior to the fire department to find 822 Beech Street engulfed in flames [ . . . ] The facts speak for themselves.  They saved lives [ . . . ] conducted themselves in an exemplary manner worthy of official recognition [ . . . ] You are a credit to the Scranton Police Department, the City of Scranton, and to yourself.  Thank you for the great job that you do." (See Exhibit 6 and Exhibit 7).

the "Impact Award," for his "outstanding service," as a Scranton Police Officer. (See Exhibit 4).

Importantly, reminded of the dangers of the job, in July 2015, Mr. McDonald delivered the emotional and articulate eulogy for Scranton Patrolman John Wilding, who died after being injured during a foot chase.  As Corporal, Mr. McDonald was responsible for training Officer Wilding, and eventually became his close friend.  His message described the type of cop that Officer Wilding embodied.  Speaking to Officer Wilding's mother, Mr. McDonald stated: "I want to be the type of cop your son, John, was."[8]

It is without question, that Mr. McDonald provided the utmost protection to Scranton residents, performed an outstanding role in several serious and life-threatening incidents, demonstrated effective teamwork, removed dangerous criminals from the Scranton streets, participated in risky and unsafe drug interdiction scenarios, and under his charge as Corporal improved the reliability, strategy, and synergy of the Scranton Police Department.  Mr. McDonald's numerous career accolades are undeniable and attributed.  Comparingly, Mr. McDonald's tragedies, and traumas incident to his career are beyond measure, mostly secreted and suppressed, causing cognitive and emotional stress,

---

[8] https://www.timesleader.com/news/local/373887/hundreds-of-police-officers-pay-final-respects-to-patrolman-wilding-in-scranton

debilitating psychological problems, post-traumatic stress disorder, depression, and personality disorders. It is within this context, that Mr. McDonald operated, witnessing or encountering deaths, attending violent incidents, being involved in pursuits and arresting offenders. Especially, within the context of his covert and undercover policing role, frequently opposite to Mr. McDonald's beliefs and personality.[9]

---

[9] Officers engaged in undercover policing are particularly prone to traumas distinct from their uniformed counterpart. For example, the fear of discovery and violent retribution should their identity be uncovered, fear about the presence of weapons, and level of involvement with targets. It has been argued that underlying neuroticism accounts for around 5–10% of observed depressive and anxiety symptoms of undercover officers and that police leaders must question the assumption that all police personnel possess the right fortitude to carry out this role. Also, it has been argued that reappearances of an alter-ego, when returned to the traditional police role, can occur in officers that are already predisposed to dissociative experiences, in conjunction with practicing a false criminal persona and deceiving others. Role ambiguity and confusion, taking on characteristics of a drug addict, making life as chaotic as possible to "blend" into the culture of drugs compound the psychological well- being of a police officer. Moreover, the inherent nature of undercover policing, naturally necessitates the maintenance of secrecy in all areas, both within and outside of the undercover policing context. Being unable to disclose the nature of their work, the uncertainty of keeping regular work hours and being unable to engage in traditional family events, including the stigma of discussing personal problems and not wanting to appear as weak in asking for support is central to the psychological impact. Exacerbation of narcissistic traits. For some, the effects of alcohol were the coping strategy employed, acting as a form of self-medication to deal with the problems of life that could not be managed as well as a form of socialization. See Curran, L.S. An Exploration of Well-being in Former Covert and Undercover Police Officers. *J Police Crim Psych* 36, 256–267 (2021).https://doi.org/10.1007/s11896-020-09406-x; Kowalczyk, D., & Sharps, M. J. (2017). Consequences of undercover operations in law enforcement: A review of challenges and best practices. *Journal of Police and Criminal Psychology, 32*(3), 197–202. https://doi.org/10.1007/s11896-016-

Accordingly, throughout October 2017 through April 2019, Mr. McDonald engaged in unlawful conduct in violation of 18 U.S.C. § 666(a)(1)(B), resulting in the Government filing a one (1) count Information on June 7, 2021. Within one week, Mr. McDonald pled guilty pursuant to a plea agreement on June 14, 2021. Under the terms of the plea agreement, the Government agreed to recommend a three (3) –level decrease under the Sentencing Guidelines for acceptance of responsibility.

The presentence report places Mr. McDonald in criminal history category II, and assigned him a total offense level of twenty-three (23). Based on these computations, the suggested guideline range for Mr. McDonald's offense is fifty-one (51) to sixty-three (63) months. Mr. McDonald submits that such a sentence would substantially exceed a "sufficient, but not greater than necessary," sentencing standard, and contradict the purposes of sentencing pursuant to 18 U.S.C. § 3553(a). As such, Mr. McDonald respectfully requests that this Court impose a below-guideline sentence.

---

9211-z; Love, K. G., Vinson, J., Tolsma, J., & Kaufmann, G. (2008). Symptoms of undercover police officers: A comparison of officers currently, formerly, and without undercover experience. *International Journal of Stress Management*, *15*(2), 136–152. https://doi.org/10.1037/1072-5245.15.2.136

## II.

Under the Sentencing Guidelines, a district court identifies the base offense level assigned to the crime in question, adjusts the level as the Guidelines instruct, and determines the defendant's criminal history category. *See* U.S.S.G. § 1B1.1. Coordinating the adjusted offense level and criminal history category yields the appropriate sentencing range. *Id.* Thus, at sentencing the district court must engage in a three (3) step inquiry. First, the district court must calculate the applicable guideline range. Second, the district court must determine basis for departure, and if departure is warranted, the affects of departure on Guideline calculation. Finally, after considering all factors in accordance with 18 U.S.C. § 3553(a), impose appropriate sentence, which may vary from the guideline range. *See* United States v. Levinson, 543 F.3d 190, 195 (3d Cir. 2008)(*citing* United States v. Wise, 515 F.3d 207, 216-217(3d Cir. 2008)(citing Gall v. United States, 552 U.S. 38, 49, 128 S. Ct. 586, 596-597, 169 L.Ed. 2d 445 (2007) and United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006)).

### 18 U.S.C. § 3553(a) Factors

In the present matter, application of the statutory sentencing factors require a downward variance be granted, and that a guideline sentence is not necessary to satisfy the statutory objectives. A guideline sentence is overly punitive. This Court "shall impose a sentence sufficient, but not greater than necessary," to

adhere to the purposes articulated in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3553(a). To that end, a court's evaluation and application of section 3553(a) factors is accorded "high deference." *See* United States v. Bungar, 478 F.3d 540, 543 (3d Cir. 2007); United States v. Cooper, 437 F.3d 324, 330 (3d. Cir. 2006); United States v. Tomko, 562 F.3d 558, 565 (3d Cir. 2009), *citing* United States v. Koon, 518 U.S. 81, 98, 116 S. Ct. 2035, 2045, 135 L.Ed. 2d 392 (1996)(recognizing the deference owed to a district judge who is in the best position to decide the issue in question). A district court has more discretion in imposing a variance, because the substance of the sentence is only subject to substantive reasonableness review. United States v. Fumo, 655 F.3d 288, 318-319 (3d Cir. 2011). The court may depart from an otherwise applicable guideline range whenever the court finds "that there exists an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b).

Moreover, imposition of sentence requires the court to act upon evidence that is logical and consistent with the factors set forth in section 3553(a). *See* Cooper, 437 F.3d at 330.

In the present case, the record "sufficiently supports the factual basis underlying [ . . . ] departure, and the degree of departure is reasonable." United States v. Koon, 518 U.S. 81, 98, 116 S. Ct. 2035, 2045, 135 L.Ed. 2d 392 (1996).

Having due regard for the purposes set forth in 18 U.S.C. § 3553(a), and for the relationship of the sentence imposed to sentences prescribed by the guidelines, applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, this Court is required to impose an appropriate sentence consistent with the following considerations. *See* 18 U.S.C. § 3553(a).

### a. The nature and circumstances of the offense and the history and characteristics of the Defendant.

As the Supreme Court reminds us, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Koon, 518 U.S. at 113, 116 S.Ct. 2035.

Prior to the occurrence and investigation of the instant matter, Mr. McDonald had no criminal history and maintains his objection to the computation of his criminal history as a Category II.[10] Nevertheless, Mr. McDonald has always

---

[10] The investigation into the instant matter began in June 2020, and the Defendant's state conviction occurred on April 27, 2021. The Defendant committed the instant offense between October 2017 through April 2019, well before his state conviction in 2021. The Category II computation overstates the actual criminal history as Mr. McDonald lived an exemplary – law abiding life prior to 2017. The 2021 state conviction occurred as a result of the psychological impact that Mr. McDonald suffered due to his termination from the Scranton Police Department. Mr. McDonald's messaging occurred four (4) days after his termination as a result of

been gainfully employed.  As a productive citizen, Mr. McDonald served in two branches of the military, the Marine Corps and the Pennsylvania National Guard. He was employed by the Scranton Police Department for eighteen (18) years and promoted to Corporal.  Mr. McDonald provided firearm instruction within the Scranton Police Department, and training for students of the ACT 120 program. As Corporal, he mentored several police officers, worked collaboratively with several specialized units, and was a positive influence on drug and alcohol treatment services.  He was received as an expert in jury trials for his experience in narcotics investigations.

In the present case, Mr. McDonald admits to his conduct recited at the guilty plea hearing and is very remorseful for what occurred.  However, Mr. McDonald requests that this Court consider his offense conduct in relation to his lack of insight into his mental health and alcohol addiction at the time, combined with the stressors of working in a covert and undercover policing role.  Based upon Mr. dedicated military service, and previously unblemished fifteen (15) years with the Scranton Police Department, the conduct that occurred represents a clear deviation from a law-abiding life.  Mr. McDonald's personal characteristics reflect a single

---

the investigation in the instant matter.  Additionally, Mr. McDonald received a time-served sentence and is currently supervised by a diversionary court, the Lackawanna County Veteran's Treatment Court, which in some successful cases merits expungement.

parent upbringing, family addictions, commendable military career, steady
employment, professional accolades, community recognition, traumas, broken
marriage, career stressors, identity crisis, alcohol addiction and mental health
diagnoses (post-traumatic stress disorder, depression, anxiety, borderline
personality disorder).

All of these factors are permissible departure factors and are adequately
supported in the record to justify a downward variance. Finally, since Mr.
McDonald's termination from employment, April 2021 state conviction, and
instant offense, he has successfully engaged with intensive outpatient mental health
counseling at the Wilkes-Barre Veteran's Hospital both one-to-one counseling as
well as group counseling. Mr. McDonald also attended inpatient treatment at
Brookdale Recovery, and Delaware Water Gap Recovery. He simultaneously
resumed intensive outpatient mental health at the VA Hospital and Drug and
Alcohol Treatment services, which he completed on March 5, 2021. He attended
monthly meetings at the VA Hospital and AA meetings approximately five (5)
times a week. Mr. McDonald's treatment remains ongoing. Currently, Mr.
McDonald sponsors three (3) individuals,[11] attends his home group every

---

[11] William Gilhooley, Lackawanna County Veteran's Court mentor stated: "Tom
has over 19 months of sobriety. He currently sponsors several individuals. He is
known for his attendance at meeting[s], he has been a pleasure to mentor [ . . . ] in
my opinion in every action, [Tom has] shown remorse and [has risen] above his
past." (See Exhibit 8). Similarly, Michael Mullen, case manager Lackawanna

Wednesday, Saturday, and Sunday.[12]  He previously chaired a veteran's meeting

on Tuesday evenings with Veterans Promise.  Mr. McDonald continues to attend a

specialized law enforcement meeting every Friday evening via Zoom.  Also, Mr.

McDonald continues to treat with a psychiatrist, Dr. Renee- Noyola- Williams and

a psychologist, Dr. Robert Wysocki.   In conjunction with this treatment, Mr.

McDonald maintains his psychiatric medication regime.  Thus, Mr. McDonald has

maintained scrupulous compliance with the conditions of his release on personal

recognizance.

### b. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

This Court has wide discretion to impose a sentence that is sufficient but not

greater than necessary to effectuate the purposes of section 3553(a).  *See* United

---

County Veteran's Court reiterated: "Tom will have 20 months of sobriety on 2-28-2022, has a home group, sponsor and is very focused on making the necessary changes to remain sober and better his life."  (See Exhibit 9).

[12] David Ragan, President of Veterans Promise, attested: "since September of 2020, Mr. Thomas McDonald has been active at Veterans Promise attending the IGY6AA meetings 3 times a week and our veteran's recovery meeting once a week [ . . . ] Tom's dedication to his personal recovery and caring attitude for his fellow veterans led him to be a highly valued member and Drug and Alcohol advocate for Veterans Promise.  Tom has gone above and beyond our expectations [ . . . ] Tom not only shares his recovery with others in these meetings but also will provide transportation to veterans who need a ride to the meetings [ . . . ] We are truly blessed to have Tom as a member  [ . . . ] Tom has exemplified what recovery and redemption is by taking accountability for his past transgressions." (See Exhibit 10).

States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed. 2d 621 (2005). A sentencing court may grant a variance where the defendant's crime is based upon aberrant conduct in an otherwise upstanding life. *See* United States v. Howe, 543 F.3d 128, 132-4 (3d. Cir. 2008); *See also* United States v. Tomko, 562 F.3d 558, 571 (3d. Cir. 2010)(affirming district court's variance that took into account defendant's negligible criminal history, employment record, community ties, and extensive charitable works).

In the present case, Mr. McDonald requests downward departure given the following mitigating circumstances. Prior to the instant conduct, Mr. McDonald held no prior criminal record. He has addressed both his mental health diagnoses, trauma, and substance abuse problems. He does not present a danger to the public, as he is consistent, unwavering, and active with his treatment. He has family support, both his mother and his girlfriend, numerous mentors and colleagues similarly situated, the assistance and encouragement of the Lackawanna County Veteran's Court Program as well as the direction of his treatment providers. He is not likely to reoffend, as he is no longer in a law enforcement position and is gainfully employed in construction. This resonates with a sentence less than the guideline range.

### c. The need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant.

Mr. McDonald is particularly deterred by the consequences of his actions. He has lost his entire livelihood yet regained a sober identity. The collateral consequences of Mr. McDonalds's prosecution and conviction include: over one (1) year of legal proceedings, legal fees, personal financial loss, the loss of his law enforcement career, public shame, humiliation, loss of standing within the community as well as the above-cited criminal conviction that will follow Mr. McDonald for the rest of his life

Further, as a result of Mr. McDonald's actions, his family will suffer financial and emotional hardship. He is involved in his younger son's life and contributes monthly child support. A long term of incarceration would cause extreme hardship to his family unit.

### d. The need for the sentence imposed to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mr. McDonald respectfully submits that he does not require additional educational or vocational training, medical care, or other vocational treatment. Mr. McDonald is currently employed in construction and is the recipient of VA disability.

Medically, Mr. McDonald "enjoys good physical health," but does suffer from several mental health diagnoses related to the multiple traumas he has experienced. As result, Mr. McDonald does require treatment, however he currently treats with a psychiatrist and psychologist, maintains his medication regime, attends weekly AA meetings, and practices a "strong" recovery program. Indeed, Mr. McDonald has proven that he is amenable to treatment and rehabilitation. Mr. McDonald is in Phase III of the Lackawanna County Veteran's Program, which holds a duration of five (5) months with fifteen (15) mandatory requirements,[13] including court attendance before the Honorable Michael J. Barrasse every three (3) weeks, meetings with probation officer, Joseph Wolff, every three (3) weeks, meetings with case manager, Michael Mullen, every three weeks, and frequent contact with Veteran mentor, William Gilhooley. All individuals listed above can sincerely attest to Mr. McDonald's strides, and compliance with the Program's requirements.[14]

Mr. McDonald does not consume illicit drugs or alcohol. As part of his participation in the Lackawanna County Veteran's Court Program, Mr. McDonald is mandatorily placed on the "color system," for random drug screening. He has

---

[13] See Exhibit 11 Lackawanna County Veterans Court Guidelines and Requirements.
[14] Both Michael Mullen and William Gilhooley have written positive letters of support on behalf of Mr. McDonald.

consistently produced negative drug screens and is approximately twenty (20)

months sober.

### e. The need for the sentence imposed to consider the kinds of sentences available, the sentencing range established by the properly calculated Guidelines, and to avoid unwarranted sentencing disparities.

In June 2021, the Government filed a one (1) count Information against Mr.

McDonald for Bribery in violation of 18 U.S.C. § 666(a)(1)(B). Mr. McDonald

pled guilty to the Information pursuant to a written plea agreement on June 14

2021. Accordingly, on Count I: Bribery, 18 U.S.C. § 666(a(1)(B), the statutory

maximum is ten (10) years imprisonment and a $250,000 fine.

With regards to the applicable Guideline range, Mr. McDonald's offense

level was computed with the 2018 Guidelines Manual. Because Mr. McDonald

objects to the probation office's Category II, prior criminal history, the precise

level remains unresolved. Nonetheless, without reference to Mr. McDonald's

objection argued above, the base total offense level listed in the presentence report

is fourteen (14). The criminal history Category is II and thus the Guideline

imprisonment range under this is fifty-one (51) to sixty-three (63) months.

While Mr. McDonald's conduct is unlawful, this Court should consider the

context in which this conduct occurred and the tremendous efforts Mr. McDonald

has made towards rehabilitation, and mental health counseling as well as the

volunteer work Mr. McDonald contributes. Importantly, Mr. McDonald made the

necessary adjustments to change his behavior and regain his previous law-abiding, dutiful, positive characteristics. Mr. McDonald has utilized the services of the VA, AA, and psychiatric and psychological providers to develop the appropriate coping strategies to process his years of trauma and accept responsibility for his unlawful conduct. Mr. McDonald admitted guilt and did not proceed to a lengthy trial. Notably, Mr. McDonald acknowledged responsibility and did not blame others for his actions.

Mr. McDonald's underlying conduct when viewed alongside the context of his cognitive and emotional stress, traumas, covert and undercover policing role and the length of time he was employed in such a capacity, alcoholism, and efforts to restore himself to a healthy state and become a productive community member does not warrant a guideline sentence.  Indeed, Mr. McDonald's compliance with the rigorous requirements of the Lackawanna County Veteran's Court Program merits a downward departure from the guideline. Mr. McDonald has been significantly deterred.

Prior to the instant offense, Mr. McDonald greatly enhanced the safety of Scranton residents and removed several dangerous offenders from the Scranton streets. He was beloved by his colleagues and lauded with numerous recognition awards, holding a remarkable military career.  Mr. McDonald committed the offenses amidst substance abuse, untreated mental illness, trauma and stress.

Weakened by the length of time in which he held a covert and undercover role as well as the obligations of his traditional police role. This reduced his rational capacity, coupled with the strains of a pending divorce and contributed substantially to the commission of the offense. Mr. McDonald's sentence should be commensurate to his conduct, and likewise, commensurate to the efforts he has made towards recovery and rehabilitation as mitigating factors. Mr. McDonald respectfully requests that this Court account for these important considerations enumerated above, especially his prior unblemished contribution to the public community both local and national, and the context in which the offenses occurred as a metric to impose an appropriate below- guideline range sentence.

WHEREFORE, pursuant to the United States Sentencing Guidelines and 18 U.S.C. § 3553(a), under the circumstances of this case, Mr. McDonald respectfully requests this Court to issue a sentence cognizant of the foregoing and permit a reasonable downward departure, as the guideline range does not account for Mr. McDonald's specific characteristics.

Respectfully submitted,

PAUL J. WALKER, ESQ.
*Paul J. Walker Law Offices*
Suite 202 Bank Towers
321 Biden Street
Scranton, PA 18503
**ATTORNEY FOR DEFENDANT,
THOMAS MCDONALD**

## <u>CERTIFICATE OF SERVICE</u>

I, _Paul Walker_, HEREBY certify that a true and

correct copy of the foregoing Sentencing Memorandum was served upon the

following counsel and the United States Probation Office by ~~hand delivery~~ on this email

_16_ day of _February_, 2022.

Michelle Olshefski
United States Attorney's Office
William J. Nealon Federal Building
P.O. Box 309
235 North Washington Avenue
Scranton, PA 18501

PAUL J. WALKER, ESQUIRE
Suite 202 Bank Towers
321 Biden Street
Scranton, PA 18503
**ATTORNEY FOR DEFENDANT
THOMAS MCDONALD**

# EXHIBIT 1

To Whom it May Concern,

I am a cousin of Thomas McDonald. He has been in my life since he was born. Always was a good young man and a quiet one as well. It was difficult for him growing up in his teenage years, but he always made good decisions and he was able to stay safe and not ever get into trouble. We were always proud of him.

After high school he wanted to do something meaningful for himself and he chose serving the community by being a police officer. He gained recognition and passed his test and was promoted to Corporal.

He then served his country by going to Iraq and was on special duties there that were very challenging, as they would be for anyone of our military. When he returned, he again was challenged by being an undercover policeman. It was difficult after serving in Iraq and when he came home, it was obvious that he was not the same young man that went to Iraq. As so many of our military that served, he was anxious and just not the same.

I know he is sorry for what has happened during the past year and a half, but I ask you to understand how much he has given of himself and how he has overcome so much. I know he is a good person and now that he has had treatment and therapy, he has an understanding of what is right and what is not. He has so much to offer now from all his experiences and I know he is helping people with their addictions and problems.

Tom is a good person that just made some foolish mistakes, and he knows it and is trying very hard to fix them and do better for his family and society.

I ask you to consider his efforts and let him continue on the good path he is now on.

I thank you for reading this letter as it is written with the love and hope that he will continue to do well.

Sincerely,

Diane Scandale

# EXHIBIT 2

## NCO EVALUATION REPORT
For Use of this form, see AR 623-205; the proponent agency is ODCSPER

SEE PRIVACY ACT STATEMENT IN AR 623-205, APPENDIX C

### PART I - ADMINISTRATIVE DATA

| a. NAME (Last, First, Middle Initial) | b. SSN | c. RANK | d. DATE OF RANK | e. PMOSC |
|---|---|---|---|---|
| MCDONALD, THOMAS J | 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 | SGT | 031114 | 63E2O |

f. UNIT, ORG., STATION, ZIP CODE OR APO, MAJOR COMMAND
Delta Company, 231st MP Battalion, 89th MP BDE, Camp Cropper, APO AE 09342

g. REASON FOR SUBMISSION  2  ANNUAL

| h. PERIOD COVERED | | i. RATED MONTHS | j. NON-RATED CODES | k. NO OF ENCL | l. RATED NCO COPY Check one and Date | m. PSC Initials | n. CMD CODE | o. PSB CODE |
|---|---|---|---|---|---|---|---|---|
| FROM | THRU | 12 | | | 1 Given to NCO        Date | | | |
| YYYY MM  2003 11 | YYYY MM  2004 10 | | | | | | | |

### PART II - AUTHENTICATION

| a. NAME OF RATER (Last, First, Middle Initial) | SSN | SIGNATURE | |
|---|---|---|---|
| Chiudzinski Kurt Edward | 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 | | DATE |

RANK, PMOSC/BRANCH, ORGANIZATION, DUTY ASSIGNMENT
SSG, 88M3O, Delta Company, 231st MP Battalion, 89th MP BDE, 2nd Squad Leader

| b. NAME OF SENIOR RATER (Last, First, Middle Initial) | SSN | SIGNATURE | |
|---|---|---|---|
| Mikels, Timothy R. | 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 | | DATE |

RANK, PMOSC/BRANCH, ORGANIZATION, DUTY ASSIGNMENT
SFC, 19K40H, Delta Company, 231st MP Battalion, 89th MP BDE, 3rd Platoon Sergeant

c. RATED NCO. I understand my signature does not constitute agreement or disagreement with the evaluations of the rater and senior rater. I further understand my signature verifies that the administrative data in Part I, the rating officials in Part II, the duty description to include the counseling dates in Part III, and the APFT and height/weight entries in Part IV is correct. I have seen the report completed through Part V, except Parts IId and IIe. I am aware of the appeals process of AR 623-205.

| SIGNATURE | |
|---|---|
| | DATE |

| d. NAME OF REVIEWER (Last, First, Middle Initial) | SSN | SIGNATURE | |
|---|---|---|---|
| Junkin, Francis Santos | 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 | | DATE |

RANK, PMOSC/BRANCH, ORGANIZATION, DUTY ASSIGNMENT
1LT, AR, Delta Company, 231st MP Battalion, 89th MP BDE, 3rd Platoon Leader

e. [ ] CONCUR WITH RATER AND SENIOR RATER EVALUATIONS   [ ] NONCONCUR WITH RATER AND/OR SENIOR RATER EVAL (See attached comments)

### PART III - DUTY DESCRIPTION (Rater)

a. PRINCIPAL DUTY TITLE
Team Leader

b. DUTY MOSC
31B20

c. DAILY DUTIES AND SCOPE (To include, as appropriate, people, equipment, facilities and dollars)
Principle NCO of a 3 person team. Supervises and leads elements of the team as directed by the squad leader. Directs the day-to-day activities of the team and ensures individual and team training is completed and logistics needed for mission accomplishment are available. Supervises confinement facility operations and procedures for counseling, management, training and employment of military police within the High Value EPW/CI detention (HVD) and High Value criminal confinement facility (HVC) as a building NCOIC.

d. AREAS OF SPECIAL EMPHASIS
Responsible for the security and safety of 93 former Iraqi Military Leaders, Civilian Internees and the 11 criminally charged former Iraqi Regime Leaders.
Rater: kurt.chiudzinski@  S/R: timothy.r.mikels@  Rev: junkin.francis@

e. APPOINTED DUTIES
Building NCOIC, team leader, HVD SOG

| f. COUNSELING DATES | INITIAL | LATER | LATER | LATER |
|---|---|---|---|---|
| | 040313 | 040711 | 041015 | |

### PART IV – ARMY VALUES/ATTRIBUTES/SKILLS/ACTIONS (Rater)

| a. ARMY VALUES. Check either "YES" or "NO". (Comments are mandatory for "No" entries; optional for "Yes" entries.) | | YES | NO |
|---|---|---|---|
| 1. LOYALTY: Bears true faith and allegiance to the U.S. Constitution, the Army, the unit, and other soldiers. | | X | |
| 2. DUTY: Fulfills their obligations | | X | |
| 3. RESPECT/EO/EEO: Treats people as they should be treated. | | X | |
| 4. SELFLESS-SERVICE: Puts the welfare of the nation, the Army, and subordinates before their own. | | X | |
| 5. HONOR: Lives up to all the Army values. | | X | |
| 6. INTEGRITY: Does what is right – legally and morally. | | X | |
| 7. PERSONAL COURAGE: Faces fear, danger, or adversity (physical and moral). | | X | |

V  Loyalty
A  Duty
L  Respect
U  Selfless-Service
E  Honor
S  Integrity
   Personal Courage

Bullet comments
- o was selected to oversee the 11 HVD's out of all other NCO's in the platoon as the building 6b NCOIC
- o exhibited high standards of behavior; a model soldier and successful leader for others to follow
- o continually demonstrated leadership and integrity above his skill level in all issues and problems he was faced with

DA FORM 2166-8, OCT 2001    REPLACES DA FORM 2166-7, SEP 87, WHICH IS OBSOLETE    USAPA V1.00

| NCO'S NAME (Last, First, Middle Initial) | | SSN | THRU DATE |
|---|---|---|---|
| DONALD, THOMAS J | | 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 | 2004 10 |

PART IV (Rater) - VALUES/NCO RESPONSIBILITIES

*Specific Bullet examples of "EXCELLENCE" or "NEEDS IMPROVEMENT" are mandatory*
*Specific Bullet examples of "SUCCESS" are optional*

| b. COMPETENCE |
|---|
| o Duty proficiency, MOS competency |
| o Technical & tactical; knowledge, skills, and abilities |
| o Sound judgment |
| o Seeking self-improvement; always learning |
| o Accomplishing tasks to the fullest capacity; committed to excellence |

| EXCELLENCE (Exceeds Std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT |  |
|---|---|---|---|
| ☐ | ☒ | (Some) ☐ | (Much) ☐ |

- o had outstanding organizational skills; maximized limited resources and time to create successful results as HVD SOG
- o was extremely competent; performed all duties above expected standards and expectations
- o used sound judgment when making decisions that affected his team and detainees, always fair and just

APFT  PASS 0311    HEIGHT/WEIGHT  69/183 YES

| c. PHYSICAL FITNESS & MILITARY BEARING |
|---|
| o Mental and physical toughness |
| o Endurance and stamina to go the distance |
| o Displaying confidence and enthusiasm; looks like a soldier |

| EXCELLENCE (Exceeds Std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT |  |
|---|---|---|---|
| ☐ | ☒ | (Some) ☐ | (Much) ☐ |

- o motivated, enthusiastic NCO who took the lead in organized physical fitness training with his team 4 times a week
- o demanded and enforced high standards of his soldier's appearance by personal example and ironing his uniforms before duty
- o exhibited bearing and direction as a building NCOIC, always in control of any given situation on his block

| d. LEADERSHIP |
|---|
| o Mission first |
| o Genuine concern for the soldiers |
| o Instilling the spirit to achieve and win |
| o Setting the example; Be, Know, Do |

| EXCELLENCE (Exceeds Std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT |  |
|---|---|---|---|
| ☐ | ☒ | (Some) ☐ | (Much) ☐ |

- o performed 8 convoy missions with 1st platoon on his down time and encouraged his team to gain additional experience by participating
- o placed the mission, soldiers and the platoon ahead of his own needs by volunteering for numerous extra duties of importance
- o developed soldiers through positive counseling, coaching, and mentoring, leading always by example first

| e. TRAINING |
|---|
| o Individual and team |
| o Mission focused; performance oriented |
| o Teaching soldiers how; common tasks, duty-related skills |
| o Sharing knowledge and experience to fight, survive and win |

| EXCELLENCE (Exceeds Std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT |  |
|---|---|---|---|
| ☒ | ☐ | (Some) ☐ | (Much) ☐ |

- o used his military and civilian knowledge and experience to help plan, develop and implement a working platoon SOP
- o trained his team to the fullest in evaluated convoy operations at Ft Dix and earned the top team of the platoon
- o conducted 3 classes a month for his team on duty related skills with 100% participation

| f. RESPONSIBILITY & ACCOUNTABILITY |
|---|
| o Care and Maintenance of equipment/facilities |
| o Soldier and equipment safety |
| o Conservation of supplies and funds |
| o Encouraging soldiers to learn and grow |
| o Responsible for good, bad, right & wrong |

| EXCELLENCE (Exceeds Std) | SUCCESS (Meets std) | NEEDS IMPROVEMENT |  |
|---|---|---|---|
| ☒ | ☐ | (Some) ☐ | (Much) ☐ |

- o maintained accountability and maintenance of over $169,820.60 worth of team equipment
- o responsible for the care and welfare of 11 HVD's and 3 soldier's as a building NCOIC without any incidents or accidents
- o his emphasis on safety resulted in his team members being awarded the Driver's Badge

PART V - OVERALL PERFORMANCE AND POTENTIAL

| a. RATER. Overall potential for promotion and/or service in positions of greater responsibility. |
|---|

| AMONG THE BEST | FULLY CAPABLE | MARGINAL |
|---|---|---|
| ☐ | ☒ | ☐ |

b. RATER. List 3 positions in which the rated NCO could best serve the Army at his/her current or next higher grade.

Squad Leader
Drill Sergeant Status
Readiness NCO

e. SENIOR RATER BULLET COMMENTS

- o accomplished professional; consistently performs above others of same rank
- o was technically and tactically proficient; discharged duties with complete professionalism and understanding
- o unique, rare talent as an NCO and leader; promote now ahead of peers and send to BNCOC immediately

| c. SENIOR RATER. Overall performance | X | | | | |
|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 |
|  | Successful | | | Fair | Poor |

| d. SENIOR RATER. Overall potential for promotion and/or service in positions of greater responsibility. | X | | | | |
|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 |
|  | Superior | | | Fair | Poor |

DA FORM 2166-8, OCT 2001     REPLACES DA FORM 2166-7, SEP 87, WHICH IS OBSOLETE     USAPA V1.00

# EXHIBIT 3

# Scranton Police Department

### Sergeant Thomas Carroll #587
### C – Shift / Patrol Division

Scranton Police Headquarters
100 South Washington Avenue
Scranton, Pennsylvania 18503
Voice mail: (570) 558-8396
Desk:        (570) 348-4134



———————————————————————————————— SCRANTON

October 3, 2006

Lieutenant Mackie
C Shift Commander
Scranton Police Dept.

Re:    Letter of Commendation

Sir,

I am writing to recognize the professional efforts of two "C" Shift Patrolman. Their efforts appear routine and can easily be overlooked due to the team effort "C" Shift puts forth on critical incident reponses. I bring to your attention the actions of Patrolmen McDonald and Schaufler on Saturday, September 30, 2006.

On this date Patrolmen McDonald and Schaufler were working as South Patrol three and one respectively. They were patrolling the area of the Econo Lodge on Stafford Avenue in response to the past criminal activity that had occurred there in recent weeks. The violent crime was due to the opening of a new "after hours" club. At approximately 0330 hours, the officers did observe a disturbance at the club entrance.

As the officers approached, a sea of people began to exit the bar with reports of "shots" being fired inside the club. Persons exited the club covered in blood. The officers separated two seriously injured patrons from the rest of the crowd and broke up a physical altercation. Patrolman Schaufler, being a trained paramedic, attended to the wounds of the victims. One, who had a facial wound believed to be caused by a gunshot and the other an arm laceration with arterial bleeding. Patrolman McDonald ensured their safety and calmly directed responding units safely into the scene.

Patrolmen McDonald and Schaufler were attentive to the needs of their beat by patrolling the high crime area where an incident was probable. Once the incident started, they immediately went into action undeterred by the numbers involved or inherent risk associated. Their professionalism, teamwork and dedication to duty reflected greatly on "C" Shift and the Scranton Police Department.

Respectfully,

Sgt. Thomas Carroll

# EXHIBIT 4



# EXHIBIT 5



**Burn Prevention Network**

PREVENTION THROUGH EDUCATION

July 24, 2012

Corporal Thomas McDonald
Scranton Police Department
100 South Washington Avenue
Scranton, PA 18503

Dear Corporal McDonald,

I am pleased to inform you that you have been selected to receive the Valley Preferred Spirit of Courage Award for heroically risking your own life or serious injury in an attempt to save another from death or injury by fire. Chief Daniel Duffy, Scranton Police Department, nominated you for your bravery in the incident that occurred on April 9, 2012.

It will be our pleasure to present this award to you at the 7th Annual **Valley Preferred Spirit of Courage Award Celebration** scheduled for Tuesday, October 2nd on the grounds of the Muhlenberg Campus, Lehigh Valley Health Network, 2545 Schoenersville Road, Bethlehem, PA. The evening will begin with a reception at 5:00 pm, followed by dinner at 6:00 p.m. and the award ceremonies at 7:00 pm. Invitations will be mailed out in August and you will receive two complimentary dinner reservations for you and a guest. Additional reservations for family and friends may be purchased for $30 each.

Upon receipt of this letter, please call the Burn Prevention Network Administrative Assistant, Susan Numbers, at 610.969.3930 to confirm your acceptance. Following that acceptance, we will arrange a short interview and or video session with you.

On behalf of the event partners, Burn Prevention Network and the Regional Burn Center of Lehigh Valley Health Network, and our presenting Sponsor, Valley Preferred, congratulations on being selected for this prestigious honor!

Sincerely,

B. Daniel Dillard
Executive Director/CEO

236 N. 17th Street, Floor 2, Allentown, PA 18104   610.969.3930   Fax 610.969.3940
www.burnprevention.org   email: burnprev@fast.net
The official registration and financial information of Burn Prevention Foundation (d/b/a Burn Prevention Network) may be obtained from the Pennsylvania Department of State by calling toll free within Pennsylvania, 1.800.732.0999. Registration does not imply endorsement.

# EXHIBIT 6

# Scranton Police Department
### Sergeant Thomas Carroll #587

Scranton Police Headquarters
100 South Washington Avenue
Scranton, Pennsylvania 18503
Tel: (570) 348-4134
Fax: (570) 207-0415
Email: tcarroll@scrantonpa.gov

 **Be Part of The Solution**

———————————————— SCRANTON

April 9, 2012

Captain Carl Graziano
Patrol Commander
Scranton Police Department

Re:    **Commendatory Actions**

Captain,

It is my pleasure to inform you of the valiant efforts taken by our patrol officers at the scene of a two alarm fire at 822-820 Beech Street on April 9, 2012. Patrolmen Schaufler, Kearney, Kaushas and Corporal McDonald did arrive at the scene prior to the fire department to find 822 Beech Street engulfed in flames. Officers conducted a limited entry of the first floor in an attempt to evacuate persons inside when they were turned away by smoke. The family consisting of an adult male, adult female and juvenile female had exited a second floor window and were now trapped on the roof of the front porch with flames and smoke coming from the windows behind them. Without hesitation the officers moved a police car into the front yard under the roof, climbed onto the hood and conducted a successful rescue of the residents. At the same time, the fire had spread to 820 Beech Street. The officers moved to it and removed a male occupant looking for the family pet. Concurrently, an elderly relative of 822 arrived and fell victim to cardiac arrest. The officers assisted the medical personnel in removing the male from the scene to the ambulance and Ptlm. Schaufler drove the ambulance to the hospital as the medics worked to resuscitate the male. Ptlm. Kaushas was hospitalized for smoke inhalation.

The facts speak for themselves. They saved lives. These Officers conducted themselves in an exemplary manner worthy of official recognition. For their courage, initiative, and dedication to duty reflected great credit upon them and were in keeping with the highest traditions of the Scranton Police Department.

Respectfully submitted,

Sergeant Thomas Carroll

# EXHIBIT 7

# Scranton Police Department
## Superintendent of Police
### Chief Daniel Duffy

Scranton Police Headquarters
100 South Washington Avenue
Scranton, Pennsylvania 18503
Tel: (570) 348-4130
Fax: (570) 207-0412
Email: dduffy@scrantonpa.gov



**Be Part of**
**The Solution**

——————————————————— SCRANTON

20 April 2012

Corporal Thomas McDonald
C Shift Corporal
Scranton Police Department

Re:   **Official Letter of Recognition**

Corporal McDonald,

I am submitting this letter in recognition of your actions on April 9th 2012 where you along with other Police Officers from the Scranton Police Department assisted residents to safety during a residential fire. Your swift actions and selflessness in this matter without question prevented an already tragic incident from becoming worse. Your actions represent your willingness to put your own safety before the safety of other persons and for that you deserve recognition for going above and beyond. You are a credit to the Scranton Police Department, the City of Scranton and to yourself. Thank you for the great job that you do.

Sincerely,

Daniel Duffy
Police Chief
City of Scranton

cc:   Patrol Captain Carl Graziano
      Lt. Joe Arbie, C Shift Commander
      File

# EXHIBIT 8

United States Courts

Middle District of Pennsylvania

235 N. Washington Ave, P.O. Box 1148

Scranrton PA.

To:  Honorable Court

Subject: Tom McDonald

Since last year, I was assigned by the Lackawanna County Drug Treatment to be a mentor to Tom.

I can tell you that Tom has over 19 months of sobriety. He currently sponsors several individuals. He is known for his attendance at meeting of AA, and spreading the good news of recovery to others.

He has been a pleasure to mentor.  He has been very open to all suggestions.

As far, as I am concerned, he is above reproach in his character and demeanor.

I found out that we shared service in our nations' armed forces, USMC.   We were both police officers.  I served in the PA State Police for 27 years and retired from Troop R, Dunmore PA.

Knowing the Tom, I know today, I would gladly work along side Tom today.

Tom,, in my opinion, in every action, shown remorse and raise above his past as Tom.

If you have any questions please feel free to contact me.

Sincerely

William Gilhooley

8 Debbie Drive

Dunmore PA 18512

Phone 570-866-2084

Email: gilworth@aol.com

# EXHIBIT 9



LACKAWANNA COUNTY
Treatment Court

February 7, 2022

RE: Thomas McDonald

To whom this may concern:

I am writing this letter on behalf of Mr. Thomas McDonald. My name in Michael Mullen, I am a case manager for Lackawanna County Treatment Court and along with Parole Officer Joseph Wolfe, Judge Michael Barrasse supervise Mr. McDonald.

Tom is currently involved in our Veterans Treatment Court program here in Lackawanna County. The program is a very intensive court-based therapeutic program for individuals currently involved in the criminal justice system. This program is only available to those who truly want to better their lives.

Mr. McDonald has been an active participant beginning 5-7-2021. He has been compliant with all of our requirements, some of which include: 1. Weekly meetings with Judge Barrasse, his Parole Officer and myself 2. Working a strong recovery program 3. Remaining free from any substance use 4. Maintaining gainful employment 5. Ongoing Drug and Alcohol/ Mental Health Treatment at the VA in Wilkes Barre. Tom will have 20 months of sobriety on 2-28-2022, has a home group, sponsor and is very focused on making the necessary changes to remain sober and better his life. Mr. McDonald also sponsors two other men in recovery and is involved with The Veterans Promise organization helping other Veterans in need.

Thank you very much for your consideration to this letter. Should you have any questions regarding Tom, please do not hesitate to contact me at (570) 496-1737 x7435.

Sincerely,

Michael Mullen

EXHIBIT 10



February 15, 2022

To Whom It May Concern,

Since September of 2020 Mr. Thomas McDonald has been active at Veterans Promise attending the IGY6 AA meetings 3 times a week and our veteran's recovery meeting once a week. Tom has volunteered for many additional activities such as cleaning, moving furniture and other odds and ends at Veterans Promise. Tom's dedication to his personal recovery and caring attitude for his fellow veterans led him to be a highly valued member and Drug and Alcohol advocate for Veterans Promise. Tom has gone above and beyond our expectations and even saved a life by taking an intoxicated veteran home from a meeting when that veteran was going to attempt to drive. Tom not only shares his recovery with others in these meetings but also will provide transportation to veterans who need a ride to the meetings. Tom was never asked to do this. He saw the need and took the initiative to make this happen. In November of 2021 Tom was voted onto our executive board as our SGT At Arms. Tom's responsibilities will be any Drill and Ceremony procedures needed for any Veterans Promise Events or veteran funerals. Tom's experiences in life good or bad have inspired others to seek the help they need to better their own lives. We are truly blessed to have Tom as a member of the Veterans Promise family and his transformation as a human is truly a miracle. Tom has had his challenges in the past no doubt, Tom has exemplified what recovery and redemption is by taking accountability for his past transgressions. We hope that you will take these words in to consideration when Mr. McDonald faces judgment.

Thank you for your Time

David Ragan

President

EXHIBIT 11

# Lackawanna County Veterans Court Guidelines and Requirements

**Mission Statement:**

The mission of the Lackawanna County Veterans' Treatment Court is to identify eligible veteran-defendants as early as possible upon their entry into the criminal justice system and divert their case supervision to a specialized program. This will be done so that their particular needs may be not only identified but also addressed in an appropriate manner while still holding these individuals accountable for the offenses which they have committed.

While many veteran defendants suffer from mental health and/or drug and alcohol addiction, the Lackawanna County Veterans' Treatment Court looks to not only address those needs but also the overall life sustaining needs of the individual participants. Many of our post combat veterans suffer from post traumatic stress due to their service during war time, the Court hopes also to address this concern appropriately and seek out the treatment and counseling for those veterans in an effort to bring them into a healthy state and restore them as productive members of their communities.

**Program Overview:**

The Lackawanna County Veterans' Treatment Court program while intensive in nature looks to address the particular needs of the individual who is being supervised. The Court may admit all types of defendants whether they are sentenced to a traditional probation or parole term or entered by way of plea into the Treatment Court and/or Accelerated Rehabilitative Disposition (ARD) program or any other form of supervision as deemed appropriate by the Courts. Overall eligibility is determined by whether or not the defendant has served in the United States Armed Forces and would be appropriate for the intensive requirements of this courts program. Although defendants may be given different terms and types of sentences, the program requirements for all participants will be uniform in that all veteran defendants will be required to complete core aspects of supervision and then be assigned particular offense related special conditions which will be reviewed and monitored with them in length by not only the Court but also individuals such as their probation officer, counselors and in some instances case managers. This approach will not only allow for fair supervision of all offenders but also for purposes of addressing their individual needs.

The program as outlined in this packet will have phases and time lines for advancement but will also be influenced by the individual veteran defendants' progress both on supervision and within treatment. The program is essentially the veteran defendants' program and their work determines their movement. This helps in addressing areas of accountability, self worth and overall investment into their recovery and direction of their own lives. The Court and probation staff will obviously supervise the veteran defendant to be sure of compliance within the program rules but is also there as an asset to the veteran defendant in an effort to assist them in addressing any and all needs that they feel are important to their development within the community.

**Eligibility:**

Ultimately a veteran defendant's eligibility and placement into the program will be determined by the Court, however initially the attached questionnaire at the end of this packet will be required to be filled out by the defendant and/or their attorney to start the process. An offender may be denied entry into the program based upon sentencing requirements, prior record or seriousness of their offense; however each defendant's case will be reviewed individually by the staff and Court to determine eligibility.

**Core Requirements of Supervision:**

**A. Drug Testing:**

As part of the Veterans' Treatment Court program, all Veterans Treatment Court clients will be placed on the color system for drug testing. This system requires that you be given a color at the start of your supervision. You are then required to call 558-1333 every day between the hours of 5:00am and 7:00am to hear the "Color of the day". This is a recorded message which will list what colors will have to report for drug screening. If your color is on the recording you must report to the Treatment Court Office on weekdays (Monday-Friday) from 6:00am until 8:30am and on weekends (Saturday and Sunday) from 7:00am until 9:30am.

Should a licensed professional determine that you do not have a drug and alcohol problem, the Judge can remove you from the color system after you complete Phase I. You can be called into the office at any time to give a random drug screen, even if you are not diagnosed with a drug and alcohol problem.

**Please do not consume any items that contain poppy seeds. Poppy seeds may cause your urine screen to show positive for opiates therefore you are not to consume any items that contain poppy seeds.** If you attempt to submit a false urine or adulterate your urine sample in any way charges will be brought against you through the Lackawanna County District Attorney's Office and you will face full prosecution for this crime.

***FAILURE TO REPORT FOR YOUR COLOR IS AUTOMATICALLY CONSIDERED A POSITIVE URINE SCREEN AND YOU WILL BE SANCTIONED FOR IT.***

**B. Medications**

Please be advised that it is very important that you notify your probation officer of any and all medications, vitamins and supplements that you may be prescribed or are taking currently. Furthermore it is your responsibility to notify your probation officer of any medications that you are prescribed in the future prior to having them filled. Failure to notify the probation office of your medications may result in you being in violation of your supervision. The reason why it is required is so that there are no misunderstandings when it comes to your drug testing. There are some types of medications that may cross-react during testing which could cause a positive result on your urine screen. In order to

avoid any confusion or misunderstandings during your supervision it is always safer to ask your probation officer before taking any type of substance. The Veterans Court team, including the Judge, will determine if you are approved to take the prescribed medications. The easiest rule to follow is ***BEFORE TAKING ANY TYPE OF MEDICINES OR SUPPLEMENTS CONSULT YOUR PROBATION OFFICER!!!!!!***

The only exception to the above rule is if in fact you are having a medical emergency and are in a hospital and there is no time to contact your probation officer or it is during a time in which the office is closed and the situation is an emergency. If this instance occurs, you then may be required to sign medical release forms for the hospital or doctor that treated you. In addition, by the next business day, you are required to bring copies to your probation officer of your prescriptions and/or other medications you were given at the hospital.

Attached to this packet you will find a SAFE MEDS list which gives you alternative over the counter medications for common ailments. None of these medications will cross react with any testing and are approved by the Court and the probation office to be taken.

Please be sure to notify your probation officer regarding any doctors and/or dentists appointments in advance.

### C. AA / NA / Peer Support Meetings:

As part of your Veterans' Treatment Court program, the Court may require that you take part in AA / NA, 12 Step or Peer Support meetings in order to help and give you support in your sobriety. As part of this, you will be required to have a sign in sheet for these meetings in order to verify your attendance. The meetings are to be used as a tool to help you learn more about your addiction and also to associate with others who may be in similar circumstances as you. If you have been diagnosed as having a drug or alcohol problem, you will be required to attend AA/NA meetings including attending two gender specific meetings per week. You may also be required to start with a 90/90 or 90 meetings in 90 days.

The Court and/or your probation officer may designate that you attend certain groups that are run by sober veterans or the staff from the local VA and/or the Vet Center. If this is required of you, your probation officer will notify you of this upon receiving this packet. Also available to you is a meeting that focuses on not only the addicted individual but the addicts' family and how the disease affects everyone in the family which could be an important aspect in re-connecting with and healing some of the issues caused as a result of your addiction. The times and locations for these meetings are listed below and you will be instructed by either your probation officer or the Court which ones you will be **required** to attend as part of your supervision.

<u>Family to Family Meeting:</u>

Wednesday at 6:00pm
Location: St. Mary's Center (320 Mifflin Avenue, Scranton)

<u>Men's Meetings</u>

7:00am Thursday and Friday
5:00pm Monday and Tuesday
Location: 8th Avenue & Linden Street Scranton, PA

<u>Veteran Specific Meetings</u>

Tuesdays and Thursdays-6-7pm-Veterans Promise-737 Main Avenue, Dickson City

Wednesday-4pm-Recovery Bank (AA) 120 Wyoming Avenue, Scranton

Tuesday-3:30pm-Wilkes Barre VA-2nd Floor Rec Room. General recovery but read from NA text.

Sunday-Veterans For Sobriety-1:30pm -415 8th Avenue Scranton

For clarification purposes, if you are ordered to complete 90 meetings in 90 days this means that you are to complete at least 1 meeting per day. You are always welcome to attend more than 1 meeting per day but this does not go towards your total for the 90 in 90. For example if you attend 2 meetings on Monday, one of those does not count for Tuesday. Furthermore, if you fail to have your sign in sheet signed at a meeting it was as though you never attended and you may be required to re-start your 90 in 90. Also forging your sign in sheet constitutes a violation of your supervision and you will face sanctioning along with re-starting your 90 in 90. Emergency circumstances will be reviewed on a case by case basis but you should make every effort to be making your meetings, as this will only help in your sobriety. ***VA Drug/Alcohol treatment groups or outside agencies (I.E. DATS, ABT, and TPALS) DO NOT count as an AA meeting***

## D. Physical / Mental Health / Drug and Alcohol Evaluations and Assessments

Upon entry into the Veterans' Treatment Court program, you will be required to meet with a representative from the VA in order to complete a physical, mental health and drug and alcohol assessment to determine the possible level of care and counseling that you may need. The benefit to the veteran defendant is that these services should be able to be provided to you free due to your eligibility for benefits through the VA. If you are not eligible for benefits through the VA due to your discharge from the military, your physical and mental health/drug and alcohol assessments will need to be completed through community providers. In addition by having these assessments completed both the Court and probation staff will be better equipped to help you address any issues you

may be having in these specific areas and assist in finding solutions to problems you may want to work on during your supervision. The ultimate goal is to improve not only your health overall but also give you tools and coping skills for the future. You must comply all follow through on all treatment recommendations as proposed by the VA. ***If you are not eligible for VA services you must attend an outside agency for Drug/Alcohol Treatment*

## E. Residence/Contact Information

You residence must be approved and deemed appropriate by your probation officer. In most instances, you are only permitted to reside within Lackawanna County when you participate on the Lackawanna County Veterans Treatment Court program. You cannot change residence without permission from your probation officer. You must notify your probation officer if you change your telephone number. You are not allowed to travel outside of Lackawanna County or the state without first notifying your probation officer. Failure to notify the Court of changes to your contact information can and may result in a violation of your probation.

## Phases:

The Veterans' Treatment Court program is under the direct supervision of Treatment Court and there are phases much like there are for traditional Drug Court. The phase lengths are as follows:

| | |
|---|---|
| Phase I | = 3 months |
| Phase II | = 4 months |
| Phase III | = 5 months |
| Phase IV | = 6 months |
| Total | = 18 months |

The above is a loose time frame for which you should progress through the program. Just because you have a certain amount of time in a phase does not mean that you will advance through it. Due to sentencing guidelines, you may be required to remain in a phase for a longer period of time before you can advance. Also, failure to comply with rules and requirements in each phase could cause your progress to be slowed or held back until compliance is attained. If you are sanctioned during a phase, this may hold up your being advanced to the next phase for a certain period of time as directed by either the Court and/or probation. In some cases depending on the type of violation you may be required to restart the phase completely. Phase advancement forms and applications should be received from your probation officer and will be reviewed with your probation officer prior to advancement.

## Phases (continued):

The components and requirements for advancement from each phase are listed below:

### Phase I
**Duration: 3 months**
**Minimum requirements:**

1. Complete a full assessment by a provider your physical / drug and alcohol and mental health concerns and follow all recommendations
2. Drug free for 45 consecutive days before phase advancement
3. Complete 90 AA/NA meetings in 90 days including two gender specific meetings.
4. Weekly meetings with your probation officer
5. Weekly meetings with your case manager
6. Attend weekly recovery group at St. Francis Center
7. Signed AA/NA meeting sheets
8. Compliance with color call in drug screen system
9. Mandatory curfew of 10:00pm
10. Attend weekly court hearings.
11. Attend evaluation and follow-up appointments with representative from EOTC.
12. Maintain frequent contact with Veteran Mentor.

### Phase II
**Duration: 4 months**
**Minimum requirements:**

1. Attend all required treatment sessions
2. Attend 4 AA/NA meetings per week including two gender specific meetings.
3. Attending recovery group at St. Francis Center
4. Drug free for 60 consecutive days prior to phase advancement
5. Secure employment or community service
6. Comply with prescribed drug and alcohol treatment, mental health treatment and/or medical treatment
7. Obtain home group
8. Obtain temporary sponsor
9. Attend bi-weekly court hearings
10. Report bi-weekly to probation officer (opposite of court hearings)
11. Report bi-weekly to case manager
12. Maintain compliance with color call in drug screening system
13. Mandatory curfew of 10:00pm
14. Maintain contact with Veteran Mentor
15. Maintain contact with EOTC representative

**Phases (continued):**

**Phase III**
**Duration: 5 months**
**Minimum requirements:**

1. Attend all required treatment sessions
2. Attend 4 AA/NA meetings per week
3. Drug free for 90 consecutive days prior to phase advancement
4. Attend Veteran Recovery group at St. Francis Center
5. Continue with employment or community service
6. Comply with prescribed drug and alcohol treatment, mental health treatment and/or medical treatment
7. Continue with home group
8. Continue with permanent sponsor
9. Attend court every 3 weeks
10. Report every 3 weeks to probation officer
11. Report every 3 weeks to case manager
12. Frequent contact with Veteran Mentor
13. Comply with appointments with EOTC representative
14. Maintain compliance with color call in drug screening system
15. Mandatory curfew of 11:00pm

**Phase IV**
**Duration: 6 months**
**Minimum requirements:**

1. Attend all required treatment sessions
2. Attend 4 AA/NA meetings per week
3. Drug free for 90 consecutive days prior to phase advancement
4. Attend Veteran Recovery Group at St. Francis Center
5. Maintain employment or complete community service if not employed
6. Comply with prescribed drug and alcohol treatment, mental health treatment and/or medical treatment
7. Maintain home group and sponsor
8. Report to probation officer monthly
9. Report to case manager monthly
10. Report to Court monthly
11. Maintain compliance with color call in drug screening system
12. Mandatory curfew of 12:00am
13. Frequent contact with Veteran Mentor
14. Comply with appointments with EOTC Representative

**Graduation:**
Should you complete the Veterans Treatment Court program successfully, you will be eligible for graduation. Because there are multiple pathways to admission into Veterans

Treatment Court (i.e. drug court plea/ traditional probation/IP/RIP sentence), the requirements post graduation for each person on the program are individualized based on their case. If you came into Veterans Court as a drug court guilty plea, once you graduate the program, should you complete six month aftercare period where you still report to your probation officer and you still report to court monthly, your charges can be dismissed from your record. If your charges are misdemeanors, your charges can be expunged from your record one year post graduation as long as you comply with the post graduation requirements. If your charges are felonies, your charges can be expunged from your record three years post graduation as long as you comply with the post graduation requirements.

If you are a sentenced offender, you will still be required to remain on probation supervision depending on your original sentence. For example, if you are sentenced to IP/RIP for a total period of 3 years and complete the phases in the minimum of 18 months, you will have a remaining 18 months of probation supervision to complete. You will be given instructions by your probation officer on how you will be required to report following graduation. You will still be required to comply with the general conditions of probation until your original maximum date but your reporting frequency and special conditions will more than likely be considerably reduced upon graduation. If you are a sentenced offender, you are not eligible for dismissal or expungement of your charges.